# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  February 23, 2023

Mr. Gregory A. Belzley
Belzley, Bathurst & Bentley
P.O. Box 278
Prospect, KY 40059

Mr. John Franklin Parker Jr.
Mr. Matthew A. Piekarski
Phillips, Parker, Orberson & Arnett
716 W. Main Street
Suite 300
Louisville, KY 40202

Re:  Case Nos. 22-5687/22-5701, *Cynthia Roberts, et al v. Manuel Cruz*
Originating Case No. : 3:19-cv-00186

Dear Counsel,

The Court issued the enclosed opinion today in these cases.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc:  Mr. James J. Vilt Jr.

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0101n.06

Case Nos. 22-5687/5701

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| CYNTHIA HEFFNER ROBERTS, Administratrix of the Estate of Christopher Allen Roberts, Deceased; CLARK C. JOHNSON, as Guardian Ad Litem for A.A.R., Christopher Allen Roberts's Minor Daughter, | ) ) ) ) ) |
|      Plaintiffs-Appellants, | ) ) |
| v. | ) ) |
| MANUEL CRUZ, | ) ) |
|      Defendant-Appellee. | ) |

FILED
Feb 23, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

O P I N I O N

Before:  SUHRHEINRICH, COLE, and MURPHY, Circuit Judges.

COLE, Circuit Judge.  After a foot chase through a motel, police officer Manuel Cruz tased Christopher Roberts while the two were in a stairwell.  Roberts fell and sustained fatal head trauma.  Cynthia Heffner Roberts, Roberts's mother, brought this lawsuit against Cruz alleging excessive force and Kentucky common law claims.  Cruz moved for summary judgment on the basis of qualified immunity, which the district court granted.  Roberts appealed.  Because Cruz's conduct violated no clearly established right, we affirm.

I. BACKGROUND

**A. Facts**

On July 19, 2018, Jeffersontown Police Officer Manuel Cruz was out on patrol.  That day, his route took him to HomeTowne Studios, a motel.  Cruz entered the parking lot and slowly cruised around, running the license plates of cars parked at the motel through a law enforcement

Case Nos. 22-5687/5701, *Roberts, et al., v. Cruz*

database.  The parking lot appeared empty except for a man polishing the rims of his car, Antonio Jewell.

Then, a man walking a dog outside the motel flagged Cruz over; Cruz stopped to talk to the man, who told him that there was a "guy" with "a big knife" walking around the motel.  The man with the dog identified himself as Jacob Pinette.  Pinette told Cruz that the man with the knife looked to be white and wore a white t-shirt and red shorts.

Cruz was in the process of radioing the police dispatcher about the unfolding incident when he came upon a man carrying what Cruz believed to be a black knife.  Cruz commanded the man, Christopher Roberts, to drop the knife.  Cruz claims that Roberts walked toward him with the knife held at waist-level, at which point Cruz drew his sidearm and pointed it toward Roberts while continuing to order him to drop the knife.

According to Cruz, Roberts's eyes were wide and his pupils appeared dilated.  Roberts did not drop the knife, and instead turned and ran up a nearby stairway.  Cruz holstered his gun and gave chase.  At some point, Cruz stumbled and lost sight of Roberts.  Cruz started running again, and soon encountered Roberts in a hallway on the second floor, allegedly trying to open the doors of several motel rooms, at which point Cruz pulled out his taser and again told Roberts to drop the knife.  According to Cruz, Roberts refused to comply with his commands, and Cruz discharged his taser at Roberts, who was standing facing him about 20 feet away.  The taser had no effect on Roberts, and he resumed running away from Cruz.

Cruz pursued Roberts again, and found him in another stairwell; this time, Roberts was descending the stairs.  The two were standing about 12 to 15 feet apart, and Roberts turned briefly to face Cruz as he hurried down the stairs.  Believing that Roberts had reached the landing and was rounding the corner toward the parking lot where Pinette and Jewell had been just moments

Case Nos. 22-5687/5701, *Roberts, et al., v. Cruz*

ago, Cruz discharged his taser again.  Roberts was stunned and fell to the ground, hitting his head in the process.

Cruz descended the stairs toward Roberts and asked if he was okay, but Roberts was non-responsive.  Cruz radioed for assistance and explained that he had fired his taser and the individual had fallen.  Cruz then noticed that Roberts was bleeding from his ear.  Cruz also stated that he called for emergency medical services twice before they arrived.  While waiting for back-up, Cruz recovered the knife from the ground near Roberts and realized that, rather than being a black-bladed knife, it was a silver-bladed knife in a black sheath.  Roberts remained unresponsive.

Another officer arrived at the scene, and after ensuring there were no more weapons on Roberts's person, they both administered the still-unconscious Roberts first aid.  Roberts died from his injuries the next day.  The coroner's report confirmed that Roberts died from head trauma and had methamphetamine and fentanyl in his system.

With Roberts deceased, the only witness to the incident besides Cruz was Pinette, the man walking his dog in the parking lot.  Pinette allegedly told paramedics and officers on the scene that he saw Cruz tase Roberts while Roberts was only about halfway down the stairs.  Pinette also said that Roberts had been gripping the railing with both hands and attempting to jump down the rest of the stairs, meaning that he could not have been holding the knife when he was tased.  Neither party has been able to locate Pinette since this incident, and so he was never deposed.

**B. Procedural History**

Cynthia Heffner Roberts brought this lawsuit against the City of Jeffersontown, Kentucky; Jeffersontown Chief of Police Sam Rogers; and Jeffersontown Police Officer Manuel Cruz, as administratrix of the estate of her deceased son, Christopher Roberts, and next friend of his daughter, A.A.R (collectively "Roberts" or "plaintiffs").  After a disagreement during discovery

Case Nos. 22-5687/5701, *Roberts, et al., v. Cruz*

involving A.A.R.'s mother, the district court appointed Clark C. Johnson to act as guardian ad litem for A.A.R. in this matter.

Plaintiffs alleged excessive force in violation of the Fourth and Fourteenth Amendments pursuant to § 1983 as well as common law claims of negligence, vicarious liability, and battery. The parties agreed to the dismissal of all claims except the excessive force and state law battery claims against Cruz.

Cruz then moved for summary judgment on the remaining claims on the basis of qualified immunity. The district court granted the motion, reasoning that even if, as plaintiffs contended, Roberts had still been on the stairs and had not been holding the knife at the moment of the taser discharge, Cruz's use of the taser was still reasonable under the circumstances and violated no clearly established right. Plaintiffs timely appealed. A clerical error resulted in both the Notice of Appeal (R. 93) and Amended Notice of Appeal (R. 95) receiving separate case numbers (Nos. 22-5687 and 22-5701), but the appeals are identical and are resolved in this opinion.

## II. ANALYSIS

### A. Legal Standards

We review a grant of summary judgment on qualified immunity grounds de novo. *Barton v. Martin*, 949 F.3d 938, 946 (6th Cir. 2020). Summary judgment is only appropriate where there is no genuine dispute of material fact such that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); Fed. R. Civ. P. 56(a).

Once the defendant raises a qualified immunity defense, the burden falls to the plaintiff to show that the defendant is not entitled to qualified immunity because his conduct violated a constitutional right that was clearly established at the relevant time. *Palma v. Johns*, 27 F.4th 419, 427–28 (6th Cir. 2022). Where, as here, a police officer is the lone survivor of the encounter

Case Nos. 22-5687/5701, *Roberts, et al., v. Cruz*

giving rise to the plaintiff's claims, we take "particular care" in assessing the district court's grant of summary judgment. *Burnette v. Gee*, 137 F. App'x 806, 809 (6th Cir. 2005) (citing *Plakas v. Drinski*, 19 F.3d 1143, 1147 (7th Cir. 1994)).

## B.  No Clearly Established Right

Broadly speaking, the Fourth Amendment prohibits the use of excessive force, and a determination of whether a particular use of force was excessive turns on its reasonableness under the totality of the circumstances. *See Stewart v. City of Euclid*, 970 F.3d 667, 672 (6th Cir. 2020). The relevant—although not exhaustive—circumstances for this analysis include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The district court concluded that these factors weighed in favor of granting Cruz qualified immunity even if, as plaintiffs argue, Roberts was still on the stairs and was no longer holding the knife in his hand when tased.  Among other things, plaintiffs argue that the district court erred in concluding that Roberts's conduct constituted an immediate threat to safety, a conclusion it reached while relying on cases where a suspect indisputably threatened officers or others with a knife. *See, e.g.*, *Reich v. City of Elizabethtown*, 945 F.3d 968, 979 (6th Cir. 2019).  Roberts, meanwhile, had a knife in hand but was not suspected or accused of using it, and was fleeing from Cruz rather than charging toward him. *Cf. Stevens-Rucker v. City of Columbus*, 739 F. App'x 834, 841–42 (6th Cir. 2018) (finding officer entitled to qualified immunity for shooting knife-wielding suspect running in his direction).

Roberts's conduct here may not have risen to the level of dangerousness present in those cases, but ultimately, we need not wade into the morass of case law on deadly force and Fourth

Case Nos. 22-5687/5701, *Roberts, et al., v. Cruz*

Amendment reasonableness.  As the Supreme Court has instructed, there is no need to perform the broader Fourth Amendment reasonableness analysis where it is clear that the specific right in question was not clearly established.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  We therefore start our analysis with whether Cruz's decision to tase Roberts in the stairwell violated one of Roberts's clearly established rights.

Here, even if Cruz's conduct violated the Fourth Amendment's prohibition on excessive force, we would nevertheless be obligated to affirm the district court's grant of summary judgment because he violated no clearly established right.  A right is clearly established when its "contours" are clear enough that every reasonable officer would know that his conduct violated that right and "existing precedent" has "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted).  The Supreme Court has also directed us to employ a "high degree of specificity" in defining the relevant right so as to better answer "the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal marks and citations omitted).

The right to be free from excessive force is and has been clearly established. *See Barton*, 949 F.3d at 954.  But whether force is "excessive" depends on the particular context.  Although this circuit has routinely determined that non-threatening individuals have a clearly established right to be free from tasing, *e.g.*, *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013), "[o]ur cases firmly establish that it is *not* excessive force to tase someone (even multiple times) when the person is actively resisting arrest[,]" *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015).  On the other hand, in a case even closer to this one—though still no perfect fit—we concluded that a suspected misdemeanant who earlier fled from police but was no longer fleeing

Case Nos. 22-5687/5701, *Roberts, et al., v. Cruz*

or resisting had a clearly established right not to be tased at the top of a staircase. *Baker v. Union Township*, 587 F. App'x 229, 236 (6th Cir. 2014). And in that case we highlighted the heightened risk of injury or death associated with tasing an individual on an elevated surface, like stairs. *Id.* at 234.

Accepting, as the district court did, that Roberts was still on the stairs and may not have had the knife in his hand at the instant of tasing, our inquiry boils down to whether an individual who disobeys police commands to drop a weapon and then flees has a right not to be tased on a staircase. Given that even the closest case to this one, *Baker*, has important distinguishing factors—specifically, there was no indication that the suspect there had a weapon and he had stopped fleeing—we conclude that this case falls into the "hazy border between excessive and acceptable force," which means that Cruz did not violate a clearly established right. *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

At bottom, "[t]he essence of qualified immunity[] is to give government officials cover when they resolve close calls in reasonable (even if ultimately incorrect) ways." *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 511 (6th Cir. 2012). Because we cannot say that Cruz's actions violated clearly established law, we must affirm the district court's grant of summary judgment on the basis of qualified immunity.

### C. Common Law Battery

Roberts's common law battery claim also fails. A defendant officer is immune from a battery claim under Kentucky law so long as the defendant's conduct was (1) a discretionary act or function; (2) taken in good faith; and (3) within the official scope of the defendant's authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

Case Nos. 22-5687/5701, *Roberts, et al., v. Cruz*

First, Cruz's use of the taser here was discretionary.  *See Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 31 (Ky. Ct. App. 2016) ("[T]he determination of the amount of force required to effect the investigatory stop or arrest is [] a discretionary act within the scope of a peace officer's authority.")  Second, as a matter of law, the evidence shows that Cruz's conduct was in "good faith" because it did not violate a clearly established right and he did not maliciously intend to harm Roberts.  *See Yanero*, 65 S.W.3d at 523; *see also Ritchie v. Turner*, 559 S.W.3d 822, 843–44 (Ky. 2018).  Third, it is undisputed that Cruz's conduct was within the purview of his capacity as a Jeffersontown Police Officer.  *See Browning v. Edmonson County*, 18 F.4th 516, 530 (6th Cir. 2021).  Cruz is therefore also immune from Roberts's state law battery claim.  *See Reich*, 945 F.3d at 982–83.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Cruz on the basis of qualified immunity.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 22-5687/5701

CYNTHIA HEFFNER ROBERTS, Administratrix of the
Estate of Christopher Allen Roberts, Deceased; CLARK C.
JOHNSON, as Guardian Ad Litem for A.A.R., Christopher
Allen Roberts's Minor Daughter,

     Plaintiffs - Appellants,

     v.

MANUEL CRUZ,

     Defendant - Appellee.

```
┌─────────────────────────────┐
│          FILED              │
│       Feb 23, 2023          │
│   DEBORAH S. HUNT, Clerk    │
└─────────────────────────────┘
```

Before:  SUHRHEINRICH, COLE, and MURPHY, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Kentucky at Louisville.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk